UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAMS DEVELOPMENT & CONSTRUCTION, INC.; CRAIG WILLIAMS; LEE WILLIAMS; WDC COMMERCIAL REAL ESTATE, INC.; WILLIAMS WORKING CAPITAL PARTNERSHIP; WILLIAMS MANAGEMENT TRUST; CRAIG & LEE WILLIAMS FAMILY PARTNERSHIP; LEE AND CRAIG PARTNERSHIP 100 LTD; LEE AND CRAIG PARTNERSHIP 200 LTD; LEE AND CRAIG PARTNERSHIP 300 LTD, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | **4:18-CV-4033-LLP** <br><br> **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendant, United States of America's ("Defendant"), Motion for Summary Judgment, Doc. 50, and a Motion to Withdraw Admission filed by WDC Commercial Real Estate, Inc., Doc. 57. The Court grants the Motion to Withdraw Admission and grants in part and denies in part Defendant's Motion for Summary Judgment.

## BACKGROUND

### I.     Facts

In 2017, the Internal Revenue Service ("IRS") began a criminal investigation of Craig Williams to determine whether he committed violation of the Internal Revenue Code. Doc. 53, ¶ 3. The focus of the investigation was to determine whether Craig Williams had unreported income and had overstated business expenses, resulting in the underpayment of personal income taxes. Doc. 53, ¶ 4; 62 ¶ 7. The special agent in charge of the investigation was Special Agent Cory L'Heureux. Doc. 55, ¶ 5.

Pursuant to this investigation, the IRS served fifteen administrative summonses upon third parties compelling the production of records in order to corroborate income and expenses reported on the tax returns. Doc. 53, ¶ 6. The summonses were issued between February 21, 2018, and March 9, 2018. Doc. 53, ¶¶ 9-23.

The following summons recipients are "third-party recordkeepers" within the meaning of 26 U.S.C. § 7603(b): a) Middleton Raines & Zapata, LLP; (b) Allegiance Bank; (c) Alliance Bernstein, LP; (d) American Express; (e) Morgan Stanley Smith Barney, LLC; (f) Bank of America, NA; (g) Citibank NA; (h) Comerica Bank; (i) JP Morgan Chase Bank, NA; Chase Bank USA NA; JP Morgan Securities LLC; and (j) Wells Fargo Bank NA. Doc. 53, ¶45. The following summons recipients are *not* third-party recordkeepers within the meaning of section 7603(b): (a) Lochinvar Golf Club; (b) The Clubs at Houston Oaks; (c) J. Pacetti Jewelers; and (d) Zadok Jewelers; and (e) Pure Insurance – Insgroup, Inc.

The first line of the each of the summonses, in what is referred to as the "Statement of Liability," states that the summons is issued "In the Matter of Craig A. or Craig Arthur Williams.". Doc. 53, ¶ 26-30. Thirteen (13) of the fifteen (15) summonses also identify Craig Williams in the Statement of Liability by listing his home address. Docs. 55-1-55-15. Each of the summonses were labeled as issuing from the Criminal Investigation Division of the IRS. Doc. 53, ¶ 30. In attachments to the summonses, Agent L'Heureux identified the names and tax identification numbers of the persons and entities whose records were the subject of the summons. Docs. 55-1-55-15. The names and tax identification numbers listed on attachments to the summonses were those belonging to Craig Williams, his wife Lee Williams, and eight of Williams's businesses—all named Plaintiffs in this matter. Docs. 55-1-55-15. In 50 instances, summons recipients were already in possession of tax identification numbers prior to service. Docs. 53, ¶¶ 47-75; 59-1.

## II.    Procedural Background

In March 2018, Plaintiffs filed a Complaint in this matter and filed an Amended Complaint on April 27, 2018. Docs. 1, 15. In their Amended Complaint, Plaintiffs allege that Defendant is liable for damages under section 7431 of the Internal Revenue Code, 26 U.S.C. § 7431, for serving summonses upon various third parties in connection with its criminal investigation of Craig Williams which disclosed, without Plaintiffs' authorization, Plaintiffs' tax identification numbers

2

and the fact that Plaintiffs were under a criminal tax investigation—all in violation of 26 U.S.C. § 6103.

On July 23, 2018, Defendant filed a Motion to Dismiss which this Court denied.  Docs. 24, 34.  On March 23, 2020, Defendant filed a Motion for Summary Judgment which is currently pending with the Court.  Therein, Defendant contends that the disclosures of return information did not violate section 6103 because they were permitted under 6103(k)(6) of the Internal Revenue Code in what is known as the "investigatory purposes exception."  In the event that the disclosures violate section 6103, Defendant argues on summary judgment that it is not liable under the good faith exception to liability provided under 26 U.S.C. § 7431(b)(1).  Also pending before the Court is a Motion to Withdraw Admission by Plaintiff WDC Commercial Real Estate, Inc.  Doc. 57.

On August 10, 2020, this Court heard oral argument from the parties on the Motion for Summary Judgment.  Doc. 67.  During oral argument, Defendant stated that it did not oppose the Motion to Withdraw Admission that had been filed by plaintiff WDC Commercial Real Estate, Inc.  Plaintiffs also affirmed during the hearing that they were seeking to recover statutory damages of $1,000 per unauthorized disclosure under section 7431(c).  At the hearing, the Court ordered the parties to file supplemental briefs on the good faith exception, 26 U.S.C. § 7431(b)(1).

The Motion for Summary Judgment has been fully briefed and supplemental briefs were filed by the parties per order of the Court.  The Motion for Summary Judgment is now ready to be ruled on by the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To meet this burden, the moving party must identify those portions of the record which demonstrate the absence of a genuine issue of material fact, or must show that the nonmoving party has failed to present evidence to support an element of the nonmovant's case on which it bears the ultimate burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which

create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir.2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, the dispute must be outcome determinative under prevailing law." *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)).

In ruling on a motion for summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  When the evidence cited in support of, or in opposition to, a motion for summary judgment takes the form of an affidavit or declaration, that affidavit or declaration must (a) be made based on the personal knowledge of the affiant or declarant, (b) set out facts that would be admissible in evidence, and (c) demonstrate that the affiant or declarant is competent to testify regarding those facts.  Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

Section 7431 of Internal Revenue Code provides that a taxpayer may bring a civil action for damages against the United States in a district court of the United States "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of [26 U.S.C. § 6103] . . . ."  26 U.S.C. § 7431.  Section 6103 of the Internal Revenue Code provides, in part, that:

> (a) **General rule**.—Returns and return information shall be confidential, and except as authorized by this title--
>
> (1)      no officer or employee of the United States,
> . . .
> shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

26 U.S.C. § 6103(a).  The term "return information" is defined in the statute to include, among other things, "a taxpayer's identity" and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing."  26 U.S.C. § 6103(b)(2)(A).  "Taxpayer

identity" is defined as "the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof." 26 U.S.C. § 6103(b)(6).

In order to recover under § 7431 for violations of § 6103, a taxpayer must prove that: (1) the disclosure was unauthorized; (2) the disclosure was made "knowingly or by reason of negligence"; and (3) the disclosure violated § 6103. 26 U.S.C. § 7431; *see Jones v. United States*, 97 F.3d 1121, 1124 (8th Cir. 1996). At issue on summary judgment is whether the disclosures of Plaintiffs' return information on the face of administrative summonses, and in attachments thereto, fall within the "investigatory purposes exception" to unauthorized disclosures as codified in 26 US.C. § 6103(k)(6) of the Internal Revenue Code.

The investigatory purposes exception authorizes IRS employees to "disclose return information" in connection with their official duties relating to a criminal tax investigation "to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available." 26 U.S.C. § 6103(k)(6). Section 6103(k)(6) further provides that "[s]uch disclosures shall be made only in such situations and under such conditions as the Secretary [of the Treasury] may prescribe by regulation." *Id.*

The Treasury Regulations define a "disclosure of return information to the extent necessary" as "a disclosure of return information which an [IRS] . . . employee, based on the facts and circumstances, at the time of the disclosure, reasonably believes is necessary to obtain information to perform properly [its] official duties." 26 C.F.R. § 301.6103(k)(6)-1(c)(1). Under the Treasury Regulations, a "necessary"[1] disclosure of return information need not be "essential or indispensable," but rather "appropriate and helpful in obtaining the information sought." *Id.* The Treasury Regulations further define "information not otherwise reasonably available" as:

> information that an internal revenue . . . employee reasonably believes, under the facts and circumstances, at the time of a disclosure, cannot be obtained in a sufficiently accurate or probative form, or in a timely manner, and without impairing the proper performance of the official duties described by this section without making the disclosure.

[1] The term "necessary" in the context of the revised Treasury Regulations refers to the necessity of the disclosure, not the "necessity of conducting an investigation or the appropriateness of the means or methods chosen to conduct the investigation." 26 C.F.R. § 301.6103(k)(6)-1(c)(1).

26 C.F.R. § 301.6103(k)(6)-1(c)(3).

## I.  Disclosures of Plaintiffs' identities and criminal investigation

"Return information" that is protected from unauthorized disclosure under section 6103(a) includes, among other things, the name of a person with respect to whom a return is filed and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing."  26 U.S.C. § 6103(b)(2)(A).  Plaintiffs argue that disclosing Craig Williams's name in the statement of liability ("In the Matter of Craig A. Williams") on the face of the summons and detailing therein that the summons was issued out of the Criminal Investigation Division of the Internal Revenue Service constitutes an unauthorized disclosure of "return information" because it discloses that Craig Williams is the subject of a criminal investigation. Doc. 58 at 18.  In the attachments to many of the summonses, Agent L'Heureux requested that the summons recipients produce records of Craig Williams, Lee Williams, and the other named Plaintiffs in this case.  Plaintiffs argue that in doing so, Agent L'Heureux disclosed, in violation of section 6103, that the Plaintiffs whose records Defendant sought were also subjects of a criminal investigation.

### A.  Background

Prior to filing its Motion for Summary Judgment, Defendant had filed a Motion to Dismiss which this Court denied.  In opposition to Defendant's Motion to Dismiss, Plaintiffs had argued that under *Diamond v. United States*, 944 F.2d 431 (8th Cir. 1991), using the identifier "Criminal Investigation Division" on the summonses immediately below the line stating that the summonses were issued in the Matter of Craig A. Williams or Craig Arthur Williams violated section 6103 because it disclosed that Mr. Williams was under a criminal investigation.  Doc. 26 at 11-12.

In *Diamond*, an IRS agent was investigating individual tax returns of a physician and his spouse and decided that it would be necessary to contact Diamond's patients to determine the amount of fees he had collected.  *Id.* at 432.  The agent contacted 201 patients by means of a circular letter and questionnaire.  *Id.*  The letter informed its recipients that "Special Agent Jay of the Criminal Investigation Division of the Internal Revenue Service was conducting an investigation of Diamond's tax liabilities for the years 1982 through 1985 and requested

information on the patients' financial transactions with [Diamond] during the relevant years." *Id.* at 432-33.

The Eight Circuit concluded on appeal that the agent's actions violated section 6103, but held that those actions resulted from a good faith, but erroneous interpretation of the statute. *Id.* at 435. In concluding that the agent's actions violated section 6103, the Court found that the agent did not need to identify himself as a member of the Criminal Investigation Division to secure the desired information, noting that in follow-up letters to many of the patients, the agent identified himself only as a "special agent" and did not mention his affiliation with the Criminal Investigation Division. *Id.* The court also found that in the summonses prepared to gather information on the taxpayer's financial transactions, the agent did not mention that he was with the Criminal Investigation Division and that other agents operating in the same state as the agent had issued circular letters without the Criminal Investigation Division identification. *Id.*

In its Memorandum Opinion and Order Denying Defendant's Motion to Dismiss, this Court noted that the Treasury Regulations implementing section 6103(a) that had been in effect when the *Diamond* case was decided were amended on July 10, 2003. Doc. 34 at 7 (citing *Disclosure of Information by Certain Officers and Employee for Investigatory Purposes*, 68 Fed. Reg. 41073-01 (Jul. 10, 2003) (to be codified at 26 C.F.R. pt. 301)). Temporary regulations were put in place which became final on July 6, 2006. *Disclosure of Information by Certain Officers and Employee for Investigatory Purposes*, 71 Fed. Reg. 38985-01 (Jul. 11, 2006) (to be codified at 26 C.F.R. pt. 301). The revised Treasury Regulations included several new provisions that were intended to "clarif[y] the standard for determining when disclosures are authorized under section 6103(k)(6)." 71 FR 38985-01. One notable addition was subsection (a)(3) which clarified that IRS employees have discretion to, in connection with their official duties:

> identify themselves, their organizational affiliation (*e.g.*, Internal Revenue Service (IRS), Criminal Investigation (CI) . . . and the nature of their investigation, when making an oral, written, or electronic contact with a third party witness. Permitted disclosures include, but are not limited to, the use and presentation of any identification media (such as a Federal agency badge, credential, or business card) or the use of an information document request, summons, or correspondence on Federal agency letterhead or which bears a return address or signature block that reveals affiliation with the Federal agency.

26 C.F.R. § 301.6103(k)(1)-1(a)(3).

As discussed in the Court's Memorandum Opinion and Order Denying Defendant's Motion to Dismiss, both the Joint Committee on Taxation and the Department of Treasury had issued reports recommending the adoption of subsection (a)(3). Doc. 34 at 10 (citing *Study of Present-Law Taxpayer Confidentiality and Disclosure Provisions as Required by Section 3802 of the Internal Revenue Service Restructuring and Reform Act of 1998, Vol. I: Study of General Disclosure Provisions (JCS-1-00)*, Joint Committee on Taxation, January 28, 2000 ("Joint Committee Report"); *Report to Congress on Scope & Use of Taxpayer Confidentiality and Disclosure Provisions, Vol. I: Study of General Provisions*, Office of Tax Policy, Department of Treasury, October 2000) ("Treasury Report")). The reports stated that the clarification provided by subsection (a)(3) was necessary to address cases such as *Diamond* where taxpayers asserted that criminal investigators, "by various means, wrongfully disclosed the criminal nature of the investigation of the taxpayers in the course of conducting third party witness interviews or inquiries." 68 FR 41073-01 (citing *Comyns v. United States*, 155 F.Supp.2d 1344 (S.D. Fla. 2001), *aff'd*, 287 F.3d 1034 (11th Cir. 2002); *Payne v. United States*, 91 F.Supp.2d 1014 (S.D. Tex. 1999), *rev'd*, 289 F.3d 377 (5th Cir. 2002); *Gandy v. United States*, Civ. No. 96-730, (E.D. Tex. 1999), *aff'd*, 234 F.3d 281 (5th Cir. 2000); *Rhodes v. United States*, 903 F.Supp. 819 (M.D. Pa. 1995); *Diamond v. United States*, 944 F.2d 431 (8th Cir. 1991)); Joint Committee Report at 208-11; Treasury Report at 52.

The Joint Committee Report and Treasury Report discussed at length *Gandy v. United States*, Civ. No. 96-730, 1999 WL 112527 (E.D. Tex. Jan. 15, 1999), a decision issued by the District Court for the Eastern District of Texas. *See* Treasury Report at 52; Joint Committee Report at 208-11. In *Gandy*, at the beginning of their interviews of a third party witnesses, IRS special agents displayed their badges and credentials to witnesses, verbally introduced themselves as special agents with the Criminal Investigation Division of the Internal Revenue Service, and stated that they were conducting an investigation of Gandy. 1999 WL 112527 at *1. When the special agents conducted telephone interviews, or served summonses on third parties, they introduced themselves in a similar manner. *Id.* The district court in *Gandy* held that disclosing that the plaintiff was under criminal investigation either directly, or through the use of identifying credentials, was not necessary to secure the desired information and thus violated section 6103. *Id.* at *4.

The Joint Committee Report stated that the court's ruling in *Gandy* "precludes special agents from identifying themselves to persons other than the taxpayer as employees of the CID and from stating that they are conducting a criminal investigation of the taxpayer." Joint Committee Report at 210. The report stated that:

> The Joint Committee staff believes a third party witness should know that the IRS agent interviewing them is an employee of the CID. By not identifying [themself] as such, the IRS agent could potentially mislead the witness about the nature of the investigation. In addition, the witness needs to know that he or she is speaking with a criminal investigator, if only to evaluate how to protect his or her own interests.

Joint Committee Report at 210.[2] The Joint Committee report recommended that IRS agents be required to identify themselves as criminal investigators and state the nature of their investigation to third parties. *Id.* at 210-11. However, the report cautioned that special agents "should be especially mindful that the disclosure of the taxpayer's identity must be necessary to obtain the information sought as required by section 6103(k)(6)." *Id.* at 211.

In response to the Joint Committee Report, the Treasury Report acknowledged that the "inability of a special agent to identify him/herself and the criminal nature of the investigation can, in some cases, interfere with the performance of his or her duties and hamper investigations," but recommended that these disclosures be discretionary rather than mandatory as was suggested by the Joint Committee. Treasury Report at 52. The Treasury Department stated that "there may be circumstances, covert operations in particular, where such identification is undesirable." *Id.* The Treasury Department also clarified that the rule would not only apply to interviews of third-party witnesses, but also to written contacts, e.g., letters intended to gather information about the target of an investigation from third parties having a known or probable transactional relationship with the target. *Id.* Ultimately, the Treasury Department recommended in its report to Congress that "IRS CI special agents [ ] be permitted (but not required) to identify themselves, their

---

[2] *See also* 68 FR 41073-01 ("When CI special agents disclose to third party witnesses that a taxpayer is under criminal investigation, there is a risk that the disclosure may adversely affect the taxpayer's reputation, particularly if the third party witnesses have no prior independent knowledge of the investigation. The government and third party witnesses have equally important interests at stake: The CI special agents' authority to accurately identify themselves so as not to mislead third party witnesses, and the third party witnesses' interest in knowing that the inquiry involves a criminal investigation to fairly assess the situation and protect their own interests."

organizational affiliation, and the criminal nature of their investigation when contacting third parties in person or in writing." *Id.*

In its Memorandum Opinion and Order Denying Defendant's Motion to Dismiss, the Court concluded, based on the clarification provided in subsection (a)(3), and the legislative history of the revised Treasury Regulations, that any information on the summonses disclosing that the summonses were issued from the criminal investigation division, or pertained to a criminal investigation, were authorized pursuant to the revised Treasury Regulations implementing the investigatory purposes exception.

In opposition to the Motion to Dismiss, Plaintiffs had argued that under *Snider v. United States*, 468 F.3d 500 (8th Cir. 2006), Defendant had violated section 6103 by identifying that Craig Williams and the other Plaintiffs were subjects of the criminal investigation.  In *Snider*, an IRS agent disclosed during interviews with third parties that the taxpayers were being investigated for criminal tax violations and accused the taxpayers of having committed several crimes.  468 F.3d at 505.  The court in *Snider* concluded that while the investigatory purposes exception permitted IRS employees to show their badges and identify themselves as criminal investigators as a necessary part of their investigation, the statute did not permit an IRS employee to identify the subject of his or her investigation.  *Id.* at 507.  The court found that because the government had not shown, nor did the record reveal, the necessity of identifying the taxpayer as the subject of his or her investigation, such disclosure was in violation of section 6103.  *Id.*

Defendant had argued that the Eighth Circuit's decision in *Snider*, which Plaintiffs cited in their Amended Complaint, was inapposite because it did not apply or discuss subsection (a)(3) of the revised Treasury Regulations since the conduct by the agent at issue in that case began in 2001 before the revised Treasury Regulations took effect in 2003.  Doc. 25 at 9.  However, this Court rejected Defendant's argument and concluded that the Eighth Circuit's holding in *Snider* accorded with subsection (a)(3) of the revised Treasury Regulations.  Doc. 34 at 12.  The Court stated that,

> In *Snider,* the court stated that it was permissible for IRS agents to show their badges and identify themselves as criminal investigators as a necessary part of their investigation.  These disclosures are specifically permitted under §301.6103(k)(6)-1(a)(3) of the revised Treasury Regulations.  What § 6103 does not permit, the court in *Snider* held, was the disclosure by the IRS during third party interviews of the taxpayer's identity.  The [c]ourt stated that "[a]n agent violates the statute, as well

as the Internal Revenue Manual, when he or she identifies the subject of his or her investigation."

Doc. 34 at 12-13.  The Court concluded that "[u]nlike disclosures of an IRS agent's identity and nature of an investigation, the revised Treasury Regulations implementing the investigatory purposes exception . . . do not explicitly authorize IRS employees to disclose a taxpayer's identification during the course of a criminal investigation."  Doc. 34 at 13.  Such disclosures are permissible, this Court held, only if made in connection with the employee's official duties, and if based on the facts and circumstances at the time of disclosure, they were "necessary in obtaining information, which is not otherwise reasonably available."  Doc. 34 at 13; 26 U.S.C. § 6103(k)(6). This Court noted that the Joint Committee Report supported this interpretation.  The Court highlighted language from the report stating that although the Joint Committee recommended that IRS agents be required to identify themselves and state the nature of their investigation, "[s]pecial agents should be especially mindful that disclosure of the taxpayer's identity must be necessary to obtain the information sought as required by section 6103(k)(6) [and that] [s]pecial agents should pursue reasonable alternative avenues of questioning to avoid identifying the taxpayer whenever possible."  Doc. 34 at 13 (citing Joint Committee Report at 211).  The Court concluded that while subsection (a)(3) of the revised Treasury Regulations makes clear that IRS agents have discretion to identify themselves, their organizational affiliation, and the nature of their investigation, whether or not the disclosure of the taxpayer's identity (also considered "return information") was necessary under the facts and circumstances to obtain the information sought by Agent L'Heureux, and whether Agent L'Heureux reasonably believed under the facts and circumstances that the information sought was not otherwise reasonably available, were questions that would require the Court to look beyond the pleadings.  Doc. 34 at 13.

Although Defendant argued that  26 U.S.C. § 7609(a)(3) mandated that all summonses issued by the IRS "identify the taxpayer to whom the summons relates or the other persons to whom the records pertain," Doc. 25 at 10, the Court noted in its Memorandum Opinion and Order Denying Defendant's Motion to Dismiss that section 7609(a)(3) applies only to those summonses subject to § 7609's notice requirements, Doc. 34 at 15.  Specifically excepted from the notice requirement are summonses issued by a criminal investigator in connection with an investigation that are served on any person who is not a third-party recordkeeper as defined in section 7603(b). 26 U.S.C. § 7609(c)(2)(E).  The Court concluded that it was unable to determine based on the

pleadings whether § 7609(a)(3)'s mandate applied to all of the summonses at issue in this case because Plaintiffs had only alleged that they were entitled to notice of summonses issued to third-party recordkeepers Citibank, Middleton Raines & Zapata, LLP, and Wells Fargo Bank.  Doc. 34 at 15.

### B.  Summary Judgment Motion

#### i.  Necessity of Disclosure

The Court now has before it in the summary judgment record copies of the summonses that are at issue in this case and more fully understands the exact nature of the disclosures of return information therein.  On the first line of the summonses, in what is referred to as the "Statement of Liability," the summonses state that they are issued "In the Matter of Craig A. Williams or Craig Arthur Williams," and 13 of the 15 summonses also identify Craig Williams in the Statement of Liability by listing his home address.  Docs. 55-1-55-15.

As the Court has already discussed at length, subsection (a)(3) of the revised Treasury Regulations make clear that an IRS employee has discretion to identify himself, his division, and the nature of the investigation orally or in writing, including in summonses, when soliciting information from third parties in the course of a criminal investigation.  The Court finds that the fact that Agent L'Heureux used the designation "Criminal Investigation" rather than the acronym "CI" on the summonses to identify his division is of little significance in light of the fact that subsection (a)(3) was enacted to clarify that the investigatory purposes exception permits employees to identify not only their organizational affiliation, but also the criminal nature of their investigation when making oral, written, or electronic contacts with third parties.

It is undisputed by the parties on summary judgment that the following summons recipients are "third-party recordkeepers" within the meaning of section 7603(b): Middleton Raines & Zapata, LLP; Allegiance Bank; Alliance Bernstein, LP; American Express; Morgan Stanley Smith Barney, LLC; Bank of America, NA; Citibank NA; Comerica Bank; JP Morgan Chase Bank, NA; Chase Bank USA NA; JP Morgan Securities, LLC, and Wells Fargo Bank NA.  Docs. 53, ¶ 45; 59, ¶ 45.  The Court concludes that the disclosure of the identity of Craig A. Williams, the taxpayer to whom the summonses pertain, and the disclosures of the identities of the other Plaintiffs in attachments to the summonses, are necessary to obtain the information sought because they are specifically mandated by section 7609(a)(3).  *See* 26 U.S.C. § 7609(a)(3) ("Any summons to which

this subsection applies . . . shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.").

As explained further below, the Court concludes that the disclosures of Craig Williams' name in the Statement of Liability and of the other Plaintiffs' names on the summons attachments issued to Lochinvar Golf Club, The Clubs at Houston Oaks, J. Pacetti, Zadok Jewelers, and Insgroup, Inc.—third parties who are *not* third-party recordkeepers within the meaning of § 7603(b)—were also necessary to obtain the information Agent L'Heureux sought.  Defendant argues on summary judgment, and this Court is in agreement, that the disclosures of these taxpayer names were necessary in order to ensure that the summonses were legally enforceable and to identify the parties in the attachments whose records were the subject of the summons.  Doc. 54 at 8.

Pursuant to section 7602, the IRS is authorized to examine any books, papers, records, or other data "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability."  26 U.S.C. § 7602.  Certain judicial standards must be met in order to enforce any administrative summons.  These standards were set forth by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964).  In contrast to the requirement for issuing a search warrant, the *Powell* Court held that the government need not meet any standard of probable cause in order to obtain enforcement of a section 7602 summons.  *Id.* at 251.  Instead,  in order to obtain judicial enforcement of a summons, the IRS must make a *prima facie* showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession, and that the administrative steps required by the Code have been followed."  *Id.* at 57-58.

In determining whether an investigation has been conducted pursuant to a legitimate purpose, courts have noted that section 7602 was not meant to permit the IRS to conduct a "fishing expedition" into a person's private affairs.  *See Bisceglia v. United States*, 420 U.S. 141, 150-51 (1975).  The Supreme Court has said that "by definition, the IRS is not engaged in a 'fishing expedition' when it seeks information relevant to a legitimate investigation of a particular

13

taxpayer." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 321 (1985).  However, the Supreme Court held in *United States v. Bisceglia*, that IRS employees are authorized to issue John Doe administrative summonses for the purpose of obtaining information from third parties regarding taxpayers whose identities were unknown.  420 U.S. at 150.  Subsequently, Congress enacted section 7609(f) of the Internal Revenue Code to provide some safeguards so that "the IRS could not use its summons powers to engage in 'fishing expeditions' that might unnecessarily trample upon taxpayer privacy." *Tiffany Fine* Arts, 469 U.S. at 320 (citing S.Rep. No. 94-938, at 373 (1976); H.R.Rep. No. 94-658, at 311 (1975)).  Under section 7609(f), the IRS may serve a John Doe summons (a summons that does not identify the taxpayer with respect to whose liability the summons is issued) upon a third party, but only if it demonstrates in an ex parte court proceeding that:

> (1) The summons relates to the investigation of a particular person or ascertainable group or class of persons, (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f).  "In other words, when the government seeks information about an unnamed person from a third party, it must show the district court that it has some reason to believe that this unnamed person violated or may violate the law." *Byers v. I.R.S.*, 963 F.3d 548, 553 (6th Cir. 2020).  "What section 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Tiffany Fine Arts*, 469 U.S. at 321.

In this case, Agent L'Heureux knew the identity of the taxpayer under investigation.  The Court concludes that based on the foregoing, Agent L'Heureux reasonably believed it was necessary to disclose the identity of Craig Williams in the Statement of Liability in order to prove to a court, in the case of enforcement, that the summons was relevant to a legitimate investigation. In addition, the Court concludes that it was necessary to disclose the identities of the other Plaintiffs in the attachments to summonses.  Agent L'Heureux would be unable to conduct his investigation if he was unable to identify the persons or entities whose records he summoned.

### ii.  Information not otherwise available

14

In order for the disclosure of return information to fall within the investigatory purposes exception, the disclosure must not only be necessary to obtain the information sought, but the information sought must also not otherwise be reasonably available. *See* 26 U.S.C. § 6103(k)(6) (stating that IRS employees "may, in connection with his official duties . . . disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available. . ."). The Treasury Regulations further define "information not otherwise reasonably available" as:

> information that an internal revenue [] employee reasonably believes, under the facts and circumstances, at the time of a disclosure, cannot be obtained in a sufficiently accurate or probative form, or in a timely manner, and without impairing the proper performance of the official duties described by this section without making the disclosure.

26 C.F.R. § 301.6103(k)(6)-1(c)(3).

In his declaration, Agent L'Heureux stated that the focus of his investigation into whether Craig Williams committed violations of the Internal Revenue Code was on whether Craig Williams had overstated his business expenses, resulting in the underpayment of personal income taxes. Doc. 55, ¶¶ 5, 6. Agent L'Heureux stated in his declarations that he determined that the "specific item" method of proof was best suited to his investigation and that this method of proof would require him to "identif[y] the sources and amounts of reported income and expenses shown on the tax return by reconciling them to the [Craig Williams's] records." Doc. 62, ¶ 7. Agent L'Heureux stated that he needed to "determine[] the correct amounts of income, expenses, and credits using [Craig Williams's] records, bank records, investment account records, and/or contacts with third parties and compare[] the correct amounts to those reported on the tax return," which process would reveal any items of unreported income. Doc. 62, ¶ 7.

The revised Treasury Regulations make clear that IRS employees are "not require[d] . . . [to] seek information from a taxpayer or authorized representative prior to contacting a third party witness in an investigation . . . [and that an] employee may make a disclosure to a third party witness to corroborate information provided by a taxpayer." 26 C.F.R. § 301.6103(k)(6)-1(c)(3). The Court finds that there is no dispute that under the facts and circumstances of this case, the information Agent L'Heureux sought—the verification of sources and amounts of income and

expenses reported on a tax return—was information that was not otherwise reasonably available without contacting third parties.

The Court may not second-guess "the appropriateness of the means or methods chosen to conduct the investigation." *See* 26 C.F.R. § 301.6103(k)(6)-1. In this particular case, Agent L'Heureux elected to verify the sources and amounts of reported personal and business-related income and expenses and summoned the records of third parties to aid him in doing so. As the Court has already concluded, disclosures of taxpayer names on the summonses, and the fact that the summonses were issued by the Criminal Investigation Division of the IRS, were "necessary" under the facts and circumstances to ensure to that the summonses were legally enforceable and to obtain information that was not otherwise reasonably available (verification of income and expenses).

## II.    Disclosures of taxpayer address

Of the 15 administrative summonses at issue in this case, 13 of them had the mailing address of Craig A. Williams on the face of the administrative summons: "In the Matter of Craig A. Williams, mailing address." Docs. 55-1-55-15. Plaintiffs argue that the disclosures of Craig Williams's home address violated section 6103.

As stated above, in order to obtain judicial enforcement of a summons, the IRS must make a *prima facie* showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession, and that the administrative steps required by the Code have been followed." *Powell*, 379 U.S. at 57-58. The Court concludes that identifying not only the name, but also the address, of the taxpayer with respect to whose liability the summons relates is necessary under the facts of this case in order to demonstrate to the court in an enforcement proceeding that the information sought is relevant to a "legitimate investigation of a particular taxpayer." *Tiffany Fine Arts*, 469 U.S. at 321. The name "Craig Williams" is not unique and a cursory search of the Internet shows that there are numerous other Craig Williamses residing in the Houston area. By detailing the name and address of Craig A. Williams in the Statement of Liability on the summonses in this case, the IRS is able to demonstrate that the information requested relates to an ongoing investigation of an identifiable person.

III.    **Disclosures of tax identification numbers**

A.  **Tax identification numbers already in possession of summons recipients**

As the Court concluded in its Memorandum Opinion and Order Denying Plaintiffs' Motion to Dismiss, in order to prove that a "disclosure" of a tax identification number was made to a summons recipient, Plaintiffs must prove that the third party recipients of the Summonses did not already have knowledge of Plaintiffs' tax identification numbers.  Doc. 34 at 18.  The Court concluded that this interpretation most closely aligned with the definition of "disclosure" provided in the Internal Revenue Code which is "the making known to any person in any manner whatever a return or return information."  Doc. 34 at 17; 26 U.S.C. § 6103(b)(8).

Having granted WDC Commercial Real Estate, Inc.'s Motion to Withdraw Admission, it is undisputed by the parties that in 50 instances, the summons recipients were already aware of Plaintiffs' tax identification numbers prior to service of the summonses.  Because the listing of these 50 taxpayer identification numbers do not constitute "disclosures" within the meaning of the Code, the Court concludes that they do not violate section 6103.

B.  **Disclosures of tax identification numbers to financial institutions**

Agent L'Heureux disclosed Plaintiffs' tax identification numbers in attachments to summonses served upon each of the following financial institutions: Middleton Raines & Zapata, LLP; Allegiance Bank; American Express; Morgan Stanley Smith Barney, LLC; Bank of America, NA; Citibank NA; Comerica Bank; JP Morgan Chase Bank, NA, and Wells Fargo Bank NA.  Doc. 59-1.  In the attachment to the summons served upon Alliance Bernstein, Agent L'Heureux disclosed the taxpayer identification numbers of all Plaintiffs but for Williams Development & Construction, Inc.  Doc. 59-1.  It is undisputed that all of the financial institutions mentioned above are third-party recordkeepers within the meaning of 26 U.S.C. § 7603(b).  Doc. 53, ¶ 45; 59, ¶ 45.

Plaintiffs argue that disclosures of taxpayer identification numbers on attachments to summonses served upon these third-party record keepers did not fall within the investigatory purposes exception because the disclosures were unnecessary to obtain the financial records Agent L'Heureux sought.  Doc. 58 at 15.  Plaintiffs argue that because they had already provided Agent L'Heureux their account numbers with many of the summons recipients, Agent L'Heureux could

have used the account numbers rather than tax identification numbers to identify the information sought from those third parties.  Doc. 58 at 16.

Defendant argues that disclosure of taxpayer identification numbers on attachments to the summonses was "reasonably necessary to ensure collection of complete and accurate records."[3] Doc. 61 at 9.  In his declaration, Agent L'Heureux stated that at the outset of the investigation, it was unknown which of Craig Williams' business entities were involved in potential violations of the United States Code and how many accounts each plaintiff may have had at the various financial institutions.  Doc. 62, ¶¶ 12, 14.  Agent L'Heureux stated that although Plaintiffs had provided him with some account numbers, it was necessary to verify that the information that he had received from Plaintiffs was complete, and that there were no other accounts and related financial records that Plaintiffs had not disclosed.  *See* Doc. 62, ¶¶ 8, 14.

The revised Treasury Regulations make clear that an IRS employee may contact third parties to corroborate information provided by a taxpayer.  *See* 26 C.F.R. § 301.6103(k)(6)-1(c)(3) ("[A]n internal revenue . . . employee may make a disclosure to a third party witness to corroborate information provided by a taxpayer.").  An example in the revised Treasury Regulations provides that a revenue agent may contact a taxpayer's suppliers in order to corroborate invoices provided by a taxpayer.  The example states that such disclosures are considered necessary to obtain information not otherwise reasonably available (corroboration of invoices) because suppliers would be the only source available for corroboration of this information.  26 C.F.R. § 301.6103(k)(6)-1(d).  Based on the revised Treasury Regulations, the Court concludes that it was necessary under the facts and circumstances of the case for Agent L'Heureux to seek financial records from these third-party recordkeepers in order to ensure the collection of complete and accurate records.

---

[3] In his declaration, Agent L'Heureux stated that the focus of his investigation was on whether the overstatement of Mr. Williams's business expenses resulted in the underpayment of personal income taxes.  Doc. 55, ¶ 6.  Agent L'Heureux stated in his declarations that he determined that the "specific item" method of proof was best suited to this particular investigation which would require him to "identif[y] the sources and amounts of reported income and expenses shown on the tax return by reconciling them to the [Craig Williams's] records."  Doc. 62, ¶ 7 (citing Internal Revenue Manual 9.5.9.4.3.1(1)).  Agent L'Heureux would also need to "determine[] the correct amounts of income, expenses, and credits using [Craig Williams's] records, bank records, investment account records, and/or contacts with third parties and compare[] the correct amounts to those reported on the tax return" which would reveal any items of unreported income.  Doc. 62, ¶ 7 (citing Internal Revenue Manual 9.5.9.4.3.1(1)).

However, that is not the end of the Court's inquiry.  Although it is undisputed that corroboration of information provided by Plaintiffs was necessary under the facts and circumstances of the case, the Government is entitled to summary judgment on this issue only if the Court determines that the *disclosures* of tax identification numbers were "necessary" to obtain this information.  *See* 26 U.S.C. § 6103(k)(6) (stating that IRS employees are authorized to disclose return information in connection with official duties relating to a criminal tax investigation "to the extent that such *disclosure* is necessary in obtaining information, which is not otherwise reasonably available.") (emphasis added).  In order to conclude as a matter of law that the disclosure of tax identification numbers to the financial institutions in this case were necessary to obtain the records sought by Agent L'Heureux, the Court must find that no question of fact exists as to whether Agent L'Heureux reasonably believed, "based on the facts and circumstances, at the time of the disclosure" that the disclosures were necessary to obtain the financial records he sought from these third parties.  A "necessary" disclosure is defined in the Treasury Regulations as being not essential or indispensable, but rather as being "appropriate and helpful in obtaining the information sought."  26 C.F.R. § 301.6103(k)(6)-1(c)(1).

Plaintiffs contend that summary judgment on this issue is improper because the Agent L'Heureux's opinion as to the necessity of these disclosures to financial institutions is conclusory.  This Court disagrees.  Agent L'Heureux stated in his declaration that third-party recordkeepers typically maintain identifying information about their customers, including tax identification numbers, and that disclosure of Plaintiffs' tax identification numbers "was necessary to assist the third-party record keepers in correctly identifying the individuals or entities to whom the summoned records related."  Doc. 55, ¶¶ 17, 20.  The Court finds that Agent L'Heureux's declaration contains sufficient factual allegations establishing that the disclosures of Plaintiffs' tax identification numbers were appropriate and helpful, and therefore "necessary" for the financial institutions to identify any accounts and associated records that may be held by the named Plaintiffs.  *See Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 428 (8th Cir. 1998) (finding the plaintiff's affidavit in support of her retaliation claim to be conclusory because it was "devoid of any specific factual allegations that, if credited by a trial jury, could support a finding of causal connection."); *see also Stewart v. United States*, Civ. No. 94-241, 1995 WL 367938, at *4 (S.D. Ohio Mar. 27, 1995) (concluding that because financial institutions use social security numbers to

identify accounts, it was necessary to disclose the plaintiff's social security number to the third-party recordkeepers in order to identify with certainty the plaintiff's accounts).

Plaintiffs also contend that summary judgment on this issue is improper because the Agent's opinion is contradicted by evidence in the record, specifically section 25.5.2.2.1.1.(2) of the Internal Revenue Manual which provides that:

> When a third-party recordkeeper receives a summons, they often request the taxpayer's TIN to assist them in correctly identifying the taxpayer to whom the summoned records relate. In these situations, the Service may, when necessary, identify the taxpayer's [taxpayer identification number] when the summoned third party **needs** that information to identify the correct summoned records. The Service could provide the taxpayer's TIN to the third party in a letter or in a telephone call as indicated in *IRM 25.5.2.4(5) Description of Information Requested;* this would avoid disclosing information to anyone entitled to notice under IRC 7609(a).

Internal Revenue Manual, 25.5.2.2.1.1(2) (Dec. 9, 2011) (emphasis in original). Doc. 58 at 8, 10-11. Contrary to the argument put forth by the Plaintiffs, the Court does not find that section 25.5.2.2.1.1(2) of the Internal Revenue Manual contradicts or discredits Agent L'Heureux's statements in any way, thus rendering them inadmissible. The Court looks to *Scott v. Harris*, 550 U.S. 372 (2007) to provide further context on this issue. In *Scott v. Harris*, a county deputy was sued in his individual capacity for injuries that resulted from a vehicle crash when the deputy applied his push bumper to the rear of the plaintiff's vehicle during a high-speed chase. *Id.* at 375. The deputy filed a motion for summary judgment based on an assertion of qualified immunity which the district court denied on the basis that there were material facts at issue which required submission to a jury. *Id.* at 376. On interlocutory appeal, the Eleventh Circuit affirmed the district court's decision to allow the excessive force claim to proceed to trial. *Id.*

On appeal, the Supreme Court in *Scott v. Harris* acknowledged that in qualified immunity cases, a court on summary judgment usually must adopt, as the Court of Appeals did in that case, the plaintiff's version of the facts. *Id.* at 378 (stating that are on summary judgment, courts are generally required to view the facts and draw reasonable inferences "in the light most favorable to the nonmoving party"). However, the Court held that the Court of Appeals had erred in doing so because a videotape capturing the events in question, which was uncontested by the parties, clearly contradicted the version of the story told by the plaintiff and adopted by the Court of Appeals. *Id.* at 378. The Court stated that "when opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Supreme Court found that the plaintiff's version of events was "so utterly discredited by the record that no reasonably jury could have believed him." *Id.*

The Court finds that there is nothing in 25.5.2.2.1.1(2) of the Internal Revenue Manual that discredits Agent L'Heureux's statements of fact supporting his belief that disclosures of taxpayer identification numbers to the third-party recordkeepers in this case were reasonably necessary to obtain the information sought. Furthermore, the Court does not find that section 25.5.2.2.1.1(2) of the Internal Revenue Manual creates a factual dispute as to whether Agent L'Heureux reasonably believed the disclosures were "necessary" to obtain the information. Plaintiffs urge the Court to find that the disclosures of taxpayer identification numbers to third-party recordkeepers were unnecessary because these summons recipients did not first request the numbers to correctly identify the summoned records. Adopting the position advocated by Plaintiffs—that the disclosure of tax identification numbers to third-party recordkeepers may only be made if the institution needs and requests such information to correctly identify the summoned records—runs contrary to the Treasury Regulations' definition of "necessary" disclosures simply as being helpful and appropriate in obtaining the information sought.

Accordingly, the Court concludes that the disclosures of taxpayer identification numbers to third-party recordkeepers in this case does not violate section 6103 because those disclosures in this case fall within the investigatory purposes exception.

### C.  Disclosures of tax identification numbers to jewelers
#### a.  Overview

Agent L'Heureux served summonses upon two different jewelers in this case—Zadok Jewelers and J. Pacetti. In an attachment to the summons served upon Zadok Jewelers, Agent L'Heureux included the tax identification numbers of all Plaintiffs. Doc. 55-7. In an attachment to the summons served upon J. Pacetti, Agent L'Heureux listed the tax identification numbers for Craig and Lee Williams only. Doc. 55-14.

Plaintiffs argue that the disclosures of Plaintiffs' tax identification numbers in the summonses to the jewelers do not fall within the investigatory purposes exception. Specifically,

21

Plaintiffs argue that such disclosures were unnecessary to obtain Plaintiffs' records from the jewelers because customers generally do not share their social security numbers with their jewelers.  Doc. 58 at 14-15.

### b.  Analysis

The Treasury Regulations define a "disclosure of return information to the extent necessary" as "a disclosure of return information which an [IRS] . . . employee, based on the facts and circumstances, at the time of the disclosure, reasonably believes is necessary to obtain information to perform properly [its] official duties."  26 C.F.R. § 301.6103(k)(6)-1(c)(1).  The Treasury Regulations define a "necessary" disclosure not as "essential or indispensable," but rather as "appropriate and helpful in obtaining in the information sought."  26 C.F.R. § 301.6103(k)(6)-1(c)(1).

The Government contends that there is no evidence in the record disputing Agent L'Heureux's assertion that the disclosure of tax identification numbers to the jewelers was appropriate and helpful (and therefore "necessary") in obtaining the records summoned.  Doc. 61 at 1-2.  In his supplemental declaration, Agent L'Heureux stated that based upon his experience, jewelry stores frequently offer financing for in-store customers and that any such credit account is "likely" to be associated with the customer's taxpayer identification number.  Doc. 62, ¶ 15.  Agent L'Heureux stated that he accordingly concluded that the jewelers could use Plaintiffs' taxpayer identification numbers to "identify, review, and produce complete and accurate responsive records."  Doc. 62, ¶ 15.

The investigatory purposes exception should not "be broadly interpreted to evade the overarching confidentiality provisions of section 6103(k)(6)."  *Jones v. United States*, 954 F.Supp. 191, 193 (D. Neb. 1997), *aff'd*, 207 F.3d 508 (8th Cir. 2000).  In analyzing whether the disclosure of taxpayer identification numbers to the jewelers in this case were necessary, the Court finds illustrative the following examples from the Treasury Regulations.  These examples illustrate the facts and circumstances in which the disclosure of return information by an IRS employee is considered necessary to obtain information relating to the investigation or examination.  In the first example,

> A revenue agent contacts a taxpayer's customer regarding the customer's purchases made from the taxpayer during the year under investigation. The revenue agent is

> able to obtain the purchase information only by disclosing the taxpayer's identity
> and the fact of the investigation. Depending on the facts and circumstances known
> to the revenue agent at the time of the disclosure, such as the way the customer
> maintains his records, it also may be necessary for the revenue agent to inform the
> customer of the date of the purchases and the types of merchandise involved for the
> customer to find the purchase information.

26 C.F.R. § 301.6103(k)(6)(c)(1). What the Court finds notable from the example above is that it does not provide that an agent may disclose any and all information that may possibly be helpful to the customer to locate the purchase information, but that the disclosure must be appropriate under "the facts and circumstances known to the revenue agent at the time, such as the way the customer maintains his records." *See id.* Another example detailed in the Treasury Regulations provides as follows:

> A revenue agent is conducting an examination of a taxpayer. The taxpayer has been
> very cooperative and has supplied copies of invoices as requested. Some of the
> taxpayer's invoices show purchases that seem excessive in comparison to the size
> of the taxpayer's business. The revenue agent contacts the taxpayer's suppliers for
> the purpose of corroborating the invoices the taxpayer provided. In contacting the
> suppliers, the revenue agent discloses the taxpayer's name, the dates of purchase
> and the type of merchandise at issue. These disclosures are permissible under
> section 6103(k)(6) because, under the facts and circumstances known to the
> revenue agent at the time of the disclosures, the disclosures were necessary to
> obtain information (corroboration of invoices) not otherwise reasonably available
> because suppliers would be the only source available for corroboration of this
> information.

This second example makes clear that the disclosures of name, dates of purchase, and type of merchandise at issue were permissible under § 6103(k)(6) based on the facts and circumstances known to the agent at the time. As with the first example, there is no suggestion in this second example that it is permissible for an agent to disclose any return information that may possibly be helpful in identifying or locating the records sought.

It is clear from Agent L'Heureux's declaration that he did not know which Plaintiffs had made purchases since he disclosed the tax identification numbers of all Plaintiffs in the summons to Zadok Jewelers, or whether any of the Plaintiffs had lines of credit at either of the jewelers at the time of disclosures. Agent L'Heureux did not specify any due diligence he had conducted on

23

whether either of the jewelers advertised offering lines of credit to their customers,[4] and if they did, what identifying information the jewelers would need to identify and locate such records. Agent L'Heureux stated only that if a customer happens to have a credit account with a jeweler, it is "likely" to be associated with the customer's tax identification number.

The Court finds that the facts and circumstances surrounding the disclosures of taxpayer identification numbers to J. Pacetti and Zadok Jewelers to differ from those surrounding the disclosures of such information to the financial institutions in this case. In his declaration, Agent L'Heureux established that financial institutions maintain the taxpayer identification numbers of their account holders and that these financial institutions are able to use this information to identify any accounts and associated records that may have been held by any of the named Plaintiffs. By contrast, Agent L'Heureux's declaration establishes that jewelers typically do not maintain the taxpayer identification numbers of their customers unless such customer happens to have a credit account. Even then, Agent L'Heureux's declaration fails to establish that jewelers generally, or that J. Pacetti and Zadok Jewelers, in particular, use tax identification numbers to identify and locate records relating to their customers. If an agent need only assert that the disclosure of tax identification numbers could possibly be helpful in identifying records relating to any store lines of credit or other records that might possibly exist, the agent would essentially have carte blanche to disclose taxpayer identification numbers to any retailer, even if the agent has no reason to believe that (a) the retailer offers store lines of credit to its customers or has offered a store line of credit to the taxpayer whose records are summoned, or (b) is able to use this identifying information to locate such records. Adopting such a broad interpretation of the investigatory purposes exception would result in the exception swallowing the general rule prohibiting unauthorized disclosures of return information.

Based on the foregoing, the Court concludes that Defendant has not established as a matter of law that he reasonably believed based on the facts and circumstances at the time of the disclosure that the disclosures of Plaintiffs' tax identification numbers to Zadok Jewelers and J. Pacetti were necessary to obtain the records summoned.

---

[4] An email printout dated August 18, 2020, from the website of Zadok Jewelers that was attached as an exhibit to the supplemental briefing ordered by the Court on August 10, 2020, regarding the good faith exception, Doc. 70-1, does not demonstrate that Agent L'Heureux's belief as to the necessity of the disclosures at the time was reasonable and there is no evidence in the record that J. Pacetti offers lines of credit to its customers.

### D. Disclosures of tax identification numbers to Lochinvar Golf Club and The Clubs at Houston Oaks

Agent L'Heureux issued summonses to Lochinvar Golf Club and The Clubs at Houston Oaks. In an attachment to the summons served upon The Clubs at Houston Oaks, Agent L'Heureux listed the tax identification numbers of all the Plaintiffs. Doc. 55-12. In an attachment to the summons issued to Lochinvar Golf Club, Agent L'Heureux included the tax identification numbers for Craig Williams and Lee Williams only. Doc. 55-6.

Prior to the disclosures at issue in this case, Lochinvar Golf Club already possessed the tax identification number of Craig Williams and The Clubs at Houston Oaks already possessed the tax identification numbers of both Craig and Lee Williams. Doc. 69-1. Accordingly, as discussed above, the listing of these tax identification numbers does not constitute a "disclosure" within the meaning of section 6103. The Court must now evaluate whether the disclosures of tax identification numbers of Lee Williams to Lochinvar Golf Club and of the Plaintiffs other than Craig and Lee Williams to The Clubs at Houston Oaks—information not already in the possession of the summons recipients—violates section 6103.

In his supplemental declaration submitted in support of Defendant's Motion for Summary Judgment, Agent L'Heureux stated that based on his training and experience, he understood that golf or country club memberships sometimes have a cash value option that can be passed on to children in the event of death. Doc. 62, ¶ 16. In such situations, Agent L'Heureux stated that "the club membership is likely to be associated with a unique identifier such as a tax identification number – in addition to the . . . membership holders first and last name." Doc. 62, ¶ 16. Agent L'Heureux stated that he concluded that the Plaintiffs' taxpayer identification numbers could be used to "identify, review, and produce complete and accurate responsive records." Doc. 62, ¶ 16.

As with the disclosures of tax identification numbers to the jewelers in this case, the Court finds that Defendant has not established that as a matter of law that Agent L'Heureux reasonably believed, based on the facts and circumstances at the time of the disclosure, that the disclosure of the tax identification numbers of Lee Williams to Lochinvar Golf Club and of Plaintiffs (other than Craig and Lee Williams) to The Clubs at Houston Oaks were necessary to obtain the records sought. While the record demonstrates that financial institutions may use the tax identification numbers to identify their accountholders, Agent L'Heureux's declaration in no way suggests that

25

golf or country clubs typically use taxpayer identification numbers to identify their members. In his supplemental declaration, Agent L'Heureux stated that "in some instances," golf or country club memberships have a cash value option that can be passed on to children in the event of death and that in such situations, the club membership is likely to be associated with the member's taxpayer identification number. Since Agent L'Heureux disclosed the tax identification number of Lee Williams to Lochinvar Golf Club and the tax identification numbers of all of the Plaintiffs to The Clubs at Houston Oaks, it is clear that Agent L'Heureux did not know what persons or entities held a membership, let alone whether such memberships may have a cash value option. The Court does not find that such circumstances demonstrate that the disclosures were appropriate and helpful in obtaining the records Agent L'Heureux sought, only that such disclosure may possibly be helpful in obtaining the records summoned. If the Court was to interpret the investigatory purposes exception to permit disclosures of tax identification numbers to golf and country clubs in the event that the named taxpayer holds a membership, and in the event that such membership has a cash value option,[5] an Agent would have carte blanche to disclose taxpayer identification numbers to such clubs in every instance. Such an interpretation seems particularly unnecessary in light of the fact that Agent L'Heureux stated that memberships, and cash value options associated with those memberships, are associated with a club member's first and last name. Doc. 62, ¶ 16.

Based on the foregoing, the Court concludes that Defendant has not established as a matter of law that he reasonably believed, based on the facts and circumstances at the time of the disclosure, that the disclosures of Plaintiffs' tax identification numbers to Lochinvar Golf Club and The Clubs at Houston Oaks were necessary to obtain the records summoned.

## IV.    Good Faith Exception

As noted above, the Court concludes that Defendant has not established as a matter of law that the disclosures of tax identification numbers to J. Pacetti, Zadok Jewelers, Lochinvar Golf Club and The Clubs at Houston Oaks were permissible under the investigatory purposes exception.

---

[5] Agent L'Heureux stated in this declaration that in some instances, insurance policies and golf or country club membership have a cash value option that, in the event of death, can be passed on to children. The Court notes that Agent L'Heureux's declaration fails to explain why a corporate membership such as that which may have been held by Williams Development Construction, Inc. or WDC Commercial Real Estate, Inc.—entities whose tax identification numbers were disclosed to The Clubs as Houston Oaks—would have such a cash value option associated with it.

The next question the Court must examine is whether the disclosures fall within the "good faith" exception to liability.   Under section 7431(b), "[n]o liability shall arise under this section with respect to any . . . disclosure which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b)(1).  The good faith defense to a section 6103 violation "is analogous to the immunity defense provided to government officials performing discretionary functions." *Jones v. United* States, 97 F.3d 1121, 1124 (8th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Under the good-faith defense, a government official may avoid liability for violating a constitutional or statutory right where that right is not clearly established such that a reasonable person would have known that his or her conduct violated the right." *Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006).  Thus, the disclosures of tax identification numbers to Lochinvar Golf Club, The Clubs at Houston Oaks, J. Pacetti, and Zadok Jewelers will fall within the "good faith" exception to liability if a reasonable Criminal Investigation agent "would not know that the challenged conduct was illegal." *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1047 (8th Cir. 1989).  The burden of pleading and proving good faith under section 7431 rests with the government, not the complaining party.  *Jones*, 97 F.3d at 1124.

Although, in this Court's view, it seems incongruous with the qualified immunity defense afforded government officials performing discretionary functions, the Eighth Circuit Court of Appeals held in *Diamond* that "[b]ecause section 7431 authorizes causes of action against the government for a violation of section 6103, the good faith exception in section 7431(b) applies to the IRS' interpretation of section 6103." 944 F.2d at 435.  The court noted that this was particularly true because in that case, the agent's conduct accorded with specific directions contained in the Internal Revenue Manual instructing agents mailing circular letters to include the title "Special Agent, Criminal Investigation Division" in the signature block. *Id.* at 435-36.  Although the court in *Diamond* found that the IRS had failed to demonstrate that such disclosures were necessary, the court concluded that the IRS's instructions were made in good faith because elsewhere in the manual, the IRS had warned its agents against committing unnecessary disclosures and emphasized unwarranted embarrassment to the taxpayer and other damaging collateral consequences that may result from the nonjudicious use of circular letters. *Id.* at 436-37.

Unlike the agent's disclosures in *Diamond*, there is no IRS policy that explicitly authorizes Agent L'Heureux's disclosures in this case.  While the Internal Revenue Manual provides that

agents may disclose tax identification numbers to third-party recordkeepers when the third party requests it and it is necessary for them to correctly identify the summoned records, the Manual is silent as to disclosures of tax identification numbers to non-third-party recordkeepers such as the golf and country clubs, and the jewelers in this case.  The Internal Revenue Manual simply instructs agents that under the investigatory purposes exception, IRS employees may disclose return information if the employee reasonably believes, based on the facts and circumstances at the time of the disclosure, the disclosure is necessary to obtain information to properly perform the employee's official duties.  Internal Revenue Manual 11.3.21.1.4.  The Manual further provides that "[d]isclosures of return information in investigative situations may be made only if the information cannot otherwise be reasonably obtained in accurate and sufficiently probative form, or in a timely manner, without impairing the proper performance of official duties."  Internal Revenue Manual 11.3.21.1.4.

In *Diamond*, the court said that although the good faith exception in section 7431(b) typically applies to the IRS' interpretation of section 6103, the court stated that there may be situations where the good faith defense will apply to the individual agent's, and not the IRS's interpretation of section 6103.  *Diamond*, 944 F.2d at 435 n.7.  "Such a situation might arise where the IRS guidelines comply with section 6103 and the Secretary of Treasury's regulations, but the agent acting pursuant to these laws misunderstands or misinterprets not only the IRS internal guidelines but the general statutory and regulatory law as well."  *Id.*

Unlike in *Diamond*, the IRS has not given any specific guidance to IRS agents regarding the specific disclosures made by Agent L'Heureux in this case.  The Internal Revenue Manual does not specifically discuss disclosures of taxpayer identification numbers to non-third party recordkeepers beyond reiterating the general statutory and regulatory law governing the good faith exception.   Accordingly, it is Agent L'Heureux's, rather than, as in *Diamond*, the IRS's interpretation of section 6103(k)(6) that will be the subject of this Court's good faith analysis.  *See also Jones v. United States*, 207 F.3d 508, 511 (8th Cir. 2000) ("With respect to liability, the proper focus is arguably on what an objectively reasonable agent could have thought about the legality of his acts had he in fact known clearly established law, whether or not he acted to discover what it was."); *Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006) ("Under the good faith defense, a government official may avoid liability for violating a constitutional or statutory right where that

right is not clearly established such that a reasonable person would have known that his or her conduct violated the right.").

In order to determine whether Agent L'Heureux's actions, although unlawful, were made based upon a good faith interpretation of section 6103, the Court must look to whether "that right is [ ] clearly established such that a reasonable person would have known that his or her conduct violated the right." *Snider*, 468 F.3d at 507. A right is considered to be "clearly established" if,

> The contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the lawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Section 6103(k)(6) permits disclosures of return information when an IRS employee reasonably believes, based on facts and circumstances existing at the time of disclosure, that such disclosure "*is*" appropriate and helpful (and therefore "necessary") to obtain the information sought. Here, Agent L'Heureux did not point to existing facts and circumstances that necessitated the disclosures of tax identification numbers to non-third-party recordkeepers. Instead, Agent L'Heureux cited to hypothetical facts and circumstances that might necessitate the disclosure of tax identification numbers to these third parties. For example, Agent L'Heureux stated that if a Plaintiff was a customer of one of the jewelers in this case, and if such customer had a credit account, the customer's tax identification number may be associated with the credit account. Agent L'Heureux stated that under such hypothetical circumstances, the disclosure of the customer's tax identification number may be helpful in obtaining information relating to the customer's credit account. However, Agent L'Heureux did not provide any facts as to how jewelers or other retailers typically maintain their records, or how J. Pacetti or Zadok Jewelers did so in this case, and thus failed to demonstrate, even under these hypothetical circumstances, that the disclosure would be helpful in obtaining the records sought. The Court does not know what the agent actually considered, as opposed to the hypotheticals, before making the disclosures. There is no suggestion in the Treasury Regulations, caselaw, or elsewhere that it is permissible for an agent to disclose, as the record shows that Agent L'Heureux did here, return information that might possibly be helpful in locating information under hypothetical circumstances such as these. This being the summary judgment stage, and on the basis of the

record before the Court, the Court cannot say as a matter of law that a reasonable criminal investigation agent "would not know that the disclosures in this case were [unlawful]," and accordingly denies Defendant's Motion for Summary Judgment on the good faith exception.

Accordingly, it is hereby ORDERED that:

1. WDC Commercial Real Estate, Inc.'s Motion to Withdraw Admission, Doc. 57, is GRANTED; and

2. Defendant's Motion for Summary Judgment, Doc. 50 is GRANTED IN PART AND DENIED IN PART as follows:

    a. GRANTED as to Defendant's disclosures of Plaintiffs' identities and criminal nature of investigation; and

    b. GRANTED as to Defendant's disclosures of Craig Williams's home address;

    c. GRANTED as to Defendant's disclosures of tax identification numbers to third-party recordkeepers; and

    d. DENIED as to Defendant's disclosures of tax identification numbers to Lochinvar Golf Club, The Clubs at Houston Oaks, J. Pacetti Jewelers, and Zadok Jewelers.

Dated this 8th day of October, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

30